The plaintiff, Elmer Brown, claims that on October 20, 1942, he sustained an accident while loading cross-ties in the course and scope of his employment by J.H. Riggs, and that as a result of said accident he was and has remained totally and permanently disabled from doing work of the type for which he is qualified and which *Page 763 
he was performing at the time of his injury. He alleges that while loading cross-ties he slipped and that a cross-tie struck him in the right groin, causing severe injury and a swelling which burst some three months later, and took another month to completely heal, leaving a scar and causing permanent injury on his right groin, including atrophy of his right testicle; that thereafter he was unable to do any heavy lifting or any type of manual labor for which he was qualified, and that upon attempting to do any lifting or manual labor he experienced much pain. As a result of his aforesaid accident and injury he claims total permanent disability compensation at the maximum rate of $20 per week from the date of his injury, plus $250 for medical expenses.
The defendant, in his answer, denied the alleged accident and denied that plaintiff had sustained any compensable injury, and alleged further that the plaintiff was not his employee, but was the employee of W.B. Morrison, who was the independent contractor of defendant Riggs.
After trial of the case the District Judge rendered judgment in favor of defendant Riggs, dismissing plaintiff's suit at his costs, and plaintiff has appealed. The trial judge has not submitted any written reasons for his judgment.
The plaintiff, Elmer Brown, testified that on or about October 19 or 20, 1942, he was living at Hornbeck, in Vernon Parish, and that he was hired by W.B. Morrison to load cross-ties for the defendant, J.H. Riggs, and that while engaged in loading cross-ties, with his brother-in-law, he tripped and that one of the ties struck him in the right groin; that as a result he was knocked out for a few minutes and that it made him sick and he had to quit work. He states that he did not see a doctor that evening because his regular doctor, Dr. Stephens, was sick and that the next morning he saw Dr. Talbot, who "painted the knot that was in my leg and gave me some prescription for some inflammation tablets." He states further that he saw Dr. Talbot thereafter for treatments without specifying how many times he saw him. He testified that since his accident he has been disabled to the extent that he cannot load or unload cross-ties as he formerly did, although he admits that he is capable of driving a truck and also that he has continued to drive a school bus, as he formerly did, before the accident. He states that as a result of the blow to his right groin, he suffered a contusion on his right groin which burst three months later, and which took about one month thereafter to completely heal.
Howard Brown testified that he was the first cousin of plaintiff Elmer Brown and that he was working with him loading cross-ties when the accident occurred, and he corroborates plaintiff's version of the accident. He adds that he heard plaintiff tell Mr. Morrison about getting hurt.
W.M. Goins testified that prior to the alleged accident he had worked, off and on, with plaintiff and that at the time plaintiff was able to do hard manual labor, such as loading and unloading cross-ties, but that subsequent thereto he was unable to do so.
David Jeff testified to the same effect as witness Goins, as did witness Sam Nolan, and as did witness Reed Brown, plaintiff's uncle.
Plaintiff's wife testified that her husband, the day of the accident, tried to see Dr. Stephens, and being unable to see him, saw Dr. Talbot about his injury; that he complained about his leg every day and that it hurt him every time he walked and when he sits in a truck and drives it; that he still drives his truck and school bus, but that he has been unable to do hard manual labor since the accident.
The defendant J.H. Riggs testified that he entered into a contract with Morrison under which Morrison bought cross-ties for him and for which Morrison was thereafter paid at a certain rate per tie; that in so far as plaintiff was concerned, he was hired by Morrison, who had complete charge of buying ties, having them loaded and delivering them and that he, Riggs, had no control over Morrison's actions; in other words, Riggs' testimony is to the effect that plaintiff was working for Morrison, who was an independent contractor. *Page 764 
Dr. E.M. Shaw testified on behalf of plaintiff, and stated that some 10 days before the trial he made a physical examination of plaintiff, and that said physical examination was negative, except in the right inguinal region and the right thigh, where he made an examination due to plaintiff's claim of having received an injury in 1942; that he found an enlargement of the lymph nodes, inguinal and femoral, both right and left; that about two inches below the right inguinal fold, or inguinal ligament, he found a scar about one-half to two inches long; and that he found that the right testicle was smaller than the left testicle, attributing that fact to atrophy of the right testicle, and stating further, in effect, that the atrophy could have been caused by a cross-tie striking in that area.
Dr. W.E. Reid called as a witness by plaintiff, testified that in January, 1944, he performed an examination on plaintiff, who, at that time gave a history of having sustained an accident and complained of pain in the inguinal region; that he found that plaintiff had some enlarged glands in the inguinal region and was suffering from adenitis or inflammation in those inguinal glands; that he had pain radiating down in the testis, also in the inguinal region, right side. Dr. Reid testified that the enlarged glands could have been caused from a diseased condition or from trauma or injury, and that, in effect, the history of the accident given him by plaintiff offered an explanation of the condition; that plaintiff at the time of his examination was not able to work. Dr. Reid admitted that the examination he made was only of the region of plaintiff's body where plaintiff complained of pain and that he made no examination of his left inguinal region to determine whether or not he had enlarged glands there too, and also that he made no laboratory tests of any kind.
After Dr. Reid's testimony, counsel for plaintiff announced that they had Dr. Talbot present in Court, but that Dr. Talbot stated that he had no record of the case and did not remember sufficiently to testify and that therefore they would not place him on the witness stand.
Dr. Stephens was ill at the time of the trial, but his testimony was taken by deposition later. He testified that at the time of the alleged injury, on or about October 19 or 20, 1942, plaintiff came to see him, but that he was unable to examine him or treat him at that time because of illness; that later he did see plaintiff, who complained of an injury to his right groin; that he does not remember much about the case because he did not make any record and had not been treating plaintiff; that in a recent examination he found considerable scar in the right groin, and found that the right testicle was completely atrophied, which condition he states was probably due to the injury claimed by plaintiff. He expressed the opinion that plaintiff is disabled for heavy work of any kind, and that his condition is permanent and could not be corrected.
The defendant introduced the testimony of Dr. S.F. Fraser and Dr. G.F. Weber, both of whom testified very much to the same effect, that they had examined plaintiff, who gave a history of having sustained an accident on or about October 20, 1942, and that they found, on examining plaintiff that he was suffering from bilateral inguinal adenitis, that is, that he had large lymph nodes on both sides; that plaintiff had a small scar well healed, on the right side, about 2 inches below the inguinal canal. Both of these doctors found that plaintiff's left testicle was larger than the right testicle, but that the right testicle was more nearly normal than the left, and that his condition in their opinion was not caused by any trauma, but was more likely caused by some infection. Neither of these doctors felt that plaintiff was disabled from doing hard manual work.
J.E. McCarty, called by defendant, testified that in the spring of 1943 he bought an acre of land from plaintiff and employed plaintiff to haul material to build a house on the land, and that plaintiff assisted him in hauling timbers, including sills measuring 6" X 8" and 16 or 20 feet long, and that plaintiff and himself loaded and unloaded these heavy timbers, which weighed more than cross-ties.
Joe James, called as witness for defendant, also testified that in February and March of 1943, plaintiff handled cross-ties for him, including the lifting thereof. *Page 765 
In rebuttal, plaintiff denied that he did any heavy lifting for Mr. McCarty, stating that he merely built window casings for him, and witnesses Goins and Jeff testified that the reputation of J.E. McCarty for truth and veracity was bad.
It may be added that the only testimony with reference to the earnings of plaintiff is his testimony that he received 41/2 cents per cross-tie, out of which he had to pay his assistant, and that in addition to his work in loading cross-ties, he drove a school bus, for which he received the salary of $85 per month. The question arises as to whether his main occupation was driving the school bus or whether it was loading and hauling cross-ties. It is also admitted by plaintiff that he never has stopped driving his school bus and his truck since the date of his injury, and his claim is based entirely on his inability to lift heavy timbers.
In conclusion, we feel, from reading the record, that the trial judge must have reached the conclusion that he could not believe the plaintiff and his witnesses as to the accident alleged, or else if he did believe that plaintiff sustained the accident alleged, that the resulting injury was of too slight a nature as to cause a compensable disability. It will be noted that the preponderance of the evidence, to wit, the testimony of plaintiff and of his cousin who was working with him, and the fact that he gave a history, when being examined, and the further fact that he does have a scar on his right groin, is to the effect that he did sustain an accident. However, it appears to us that the preponderance of the evidence shows that the accident was slight and that plaintiff did not sustain any serious injury which caused a compensable disability. The preponderance of the medical testimony is to the effect that he had practically the same condition on his left side as on his right side, so that the swollen glands, or lymph nodes, which is the disabling condition from which he is suffering, if any, did not appear to have been caused by the alleged trauma. It will be noted that Doctors Shaw and Reid expressed the opinion that probably the blow from the cross-tie caused plaintiff's condition in his right groin, but these doctors admit that they examined only his right side, whereas Doctors Fraser and Weber, who gave plaintiff a complete examination, found practically the same condition on the left side as on the right side. Another fact which leads us to believe that plaintiff's accidental injury was slight is that Dr. Talbot, who examined him at the outset and who is supposed to have seen him and treated him thereafter, has no recollection of the case, as announced by counsel for plaintiff, and was not even placed on the stand. It is our opinion that whatever injury plaintiff sustained was very slight and caused no compensable disability and that therefore the judgment below is affirmed.